## ALLSTATE INSURANCE COMPANY *v.* REGINA LINK
### (12486)

HEIMAN, SCHALLER and SPEAR, Js.

Argued April 29—decision released August 2, 1994

*Raymond T. DeMeo,* with whom, on the brief, was *Stephen E. Goldman,* for the appellant-appellee (plaintiff).

*Bruce D. Jacobs,* with whom was *Irene P. Jacobs,* for the appellee-appellant (defendant).

HEIMAN, J. The plaintiff, Allstate Insurance Company, appeals from the judgment of the trial court correcting, modifying, and partially vacating an arbitration award of underinsured motorist benefits. On appeal, the plaintiff claims that the trial court improperly (1) stacked[1] the applicable insurance policy benefits of the defendant, Regina Link, in determining that the tortfeasor's vehicle was underinsured, and (2) declined to review the plaintiff's claim of a right to a set-off against the arbitration award for workers' compensation benefits to be awarded to the defendant in the future. The defendant cross appeals claiming that the trial court improperly reduced the amount of underinsured motorist benefits available to her by crediting to each Allstate policy the total amount paid out by the tortfeasor, thus crediting the plaintiff with double the amount actually expended by the tortfeasor's liability carrier. We affirm the trial court's judgment in part and reverse it in part.

The following facts are necessary for a proper resolution of this appeal and cross appeal. On October 24, 1986, Link was injured when the automobile she was driving was struck by a vehicle operated by Marc DeLuca. The parties agreed that the accident was caused by DeLuca's negligence. DeLuca's insurance company paid $100,000 to the defendant, exhausting the limits of DeLuca's bodily injury liability coverage.

At the time of the accident, Link held two separate automobile insurance policies with Allstate. One policy covered two vehicles, and the other policy covered four vehicles. Each policy carried a separate policy number

---

[1] "Stacking refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388 n.2, 446 A.2d 1059 (1982)." (Internal quotation marks omitted.) *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 31 n.2, 594 A.2d 977 (1991).

and provided for uninsured-underinsured motorist coverage limits of $100,000. Link claimed underinsured motorist benefits under both policies.

Link's claims were presented to a panel of arbitrators pursuant to the mandatory arbitration clause contained in the Allstate policies. On June 16, 1992, the arbitrators determined that the tortfeasor was underinsured and that Link was, therefore, entitled to underinsured motorist benefits. The arbitrators determined that the amount of available underinsured motorist coverage was $600,000. From this amount, they credited Allstate with the $100,000 previously paid to Link by the tortfeasor, and $281,244 in workers' compensation benefits received by Link as of May 26, 1992. The arbitrators declined to award Allstate a credit for any future workers' compensation payments to Link.

Allstate thereafter filed an application with the trial court to vacate, correct, or modify the award pursuant to General Statutes §§ 52-418[2] and 52-419.[3] Link filed

---

[2] General Statutes § 52-418 provides in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[3] General Statutes § 52-419 provides in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material

a counterapplication to confirm the award. A hearing was held and the trial court found that (1) Link was entitled to underinsured motorist coverage under each of the two policies, (2) Allstate failed to provide the trial court with a sufficient record to afford review of the arbitrators' decision to deny Allstate workers' compensation benefits that will be paid to Link in the future, and (3) each policy should have deducted from its cumulative limit the sum of $100,000, thereby increasing by $100,000 the amount of the deduction from the policies originally allowed by the arbitrators.

Subsequent to the trial court decision, Allstate filed a motion to open the judgment for reconsideration and requested leave to file supplemental evidence in order for the trial court to determine the issue of future workers' compensation benefits. That motion was denied.

## I

Allstate first claims that the trial court improperly confirmed the decision of the arbitrators that the tortfeasor's vehicle was underinsured. Specifically, Allstate claims that the arbitrators should not have stacked the underinsured motorist coverage for the various vehicles covered by Link's policies in making this initial determination. We disagree.

" 'In reviewing compulsory arbitration cases, this court must conduct a de novo review of the arbitrator's interpretation and application of the law. . . .' (Citations omitted; internal quotation marks omitted.) *Buell* v. *American Universal Ins. Co.*, 224 Conn. 766, 770, 621 A.2d 262 (1993)." *Allstate* v. *Lenda*, 34 Conn. App. 444, 447, 642 A.2d 22 (1994).

mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

General Statutes § 38a-336[4] provides for a two step process for determining underinsured motorist benefits that begins with the initial determination that a tortfeasor's vehicle is underinsured. *Covenant Ins. Co. v. Coon,* 220 Conn. 30, 36, 594 A.2d 977 (1991). Only after this initial determination, is made is the actual award to the insured separately calculated. Id. " '[I]n making the initial determination whether a [tortfeasor's] vehicle is underinsured, § 38a-336 clearly states that the aggregate of the liability limits under *all* of the tortfeasor's *policies* are to be compared with the uninsured motorist coverage limit of *the policy* against which a claim is made. The statute unequivocally refers to the [tortfeasor's] liability provisions in the plural but the [claimant] uninsured motorist provisions in the singular. Consequently, the analysis directed by § 38a-336 requires a comparison between the *aggregate* of [the tortfeasor's] liability limits available to the victim against the underinsured motorist limits in each *single* policy against which the victim has a claim.' " (Emphasis in original.) *Allstate Ins. Co.* v. *Lenda,* supra, 34 Conn. App. 448, quoting *Covenant Ins. Co.* v. *Coon,* supra, 35–36. In short, a separate comparison must be made between the total amounts available under any policies held by the tortfeasor and *each* of the two policies held by Link.

Although the language of General Statutes § 38a-336 as interpreted; *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 35–36; prohibits interpolicy stacking in making the initial determination of whether a tortfeasor's vehicle is underinsured, this court's recent decision in *All-*

---

[4] General Statutes § 38a-336 (formerly § 38-175c) provides in pertinent part: "(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section."

*state Ins. Co.* v. *Lenda,* supra, 34 Conn. App. 448, has made clear that intrapolicy stacking is permitted.[5] "The availability of [intrapolicy] stacking depends upon the reasonable expectations of the parties to the contract, a determination to be gleaned from the facts and circumstances of each case." *Kent* v. *Middlesex Mutual Assurance Co.,* 226 Conn. 427, 437, 627 A.2d 1319 (1993).

Neither Link nor Allstate argued or presented evidence to the arbitration panel or the trial court regarding whether Link could have reasonably expected the underinsured motorist coverage under each of her policies to be stacked. The plaintiff does not raise the issue in its brief, and "[a]n appellant who fails to brief a claim abandons it." Practice Book § 4065; *State* v. *Zarick,* 227 Conn. 207, 221, 630 A.2d 565, cert. denied, U.S. , 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993). We therefore do not address the issue and presume that intrapolicy stacking is proper as the plaintiff has not attacked the decision on these grounds. *Allstate Ins. Co.* v. *Lenda,* supra, 34 Conn. App. 448 n.6.

The trial court properly determined that the DeLuca automobile was underinsured as to each of Link's policies and that Link was entitled to collect underinsured motorist benefits under each policy. After intrapolicy stacking, Link was entitled to $200,000 in underinsured motorist coverage on the policy that covered two cars, and $400,000 on the policy that covered four cars. Thus, each of these policies was greater than the $100,000 of coverage under the tortfeasor's policy, thereby making the tortfeasor underinsured with respect to both policies.

---

[5] "Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy." (Internal quotation marks omitted.) *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388 n.2, 446 A.2d 1059 (1982).

## II

The plaintiff next claims that the trial court improperly declined to review its claim regarding future workers' compensation benefits to be awarded to Link. Generally, § 38a-334-6 of the Regulations of Connecticut State Agencies (formerly § 38-175a-6) provides that an insurer's liability for underinsured motorist coverage may be reduced "to the extent that damages have been . . . paid or are payable under any workers' compensation or disability benefits law." The trial court found that Allstate failed to provide the court with a record of the arbitration proceedings and failed to cite to any factual evidence on which the arbitrators could have determined the value of any future award.

The trial court cannot review the award of the arbitration panel regarding the future workers' compensation benefits without an adequate record. General Statutes §§ 52-418 and 52-419 require the trial court to find specific improprieties of the arbitration panel before the award may be vacated, modified, or corrected. It is impossible and unrealistic to require the trial court to make any determination absent the record of the arbitration proceedings. Just as we require an appellant to provide an adequate record for this court to review the trial court upon appeal; see *Holmes* v. *Holmes,* 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993); the trial court must require the same. We cannot expect the trial court to have extrasensory powers not possessed by this court.

Allstate also asserts that the trial court improperly denied its motion to open and to file supplemental evidence in the form of Link's projected future medical costs submitted during the arbitration proceedings. We are unpersuaded.

"Once a judgment has been rendered it is to be considered final and it 'should be left undisturbed by posttrial motions except for a good and compelling reason.' *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983)." *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 533, 577 A.2d 288 (1990); *Ducci Electrical Contractors, Inc.* v. *Dept. of Transportation,* 28 Conn. App. 175, 611 A.2d 891 (1992). "A motion to open and vacate a judgment is addressed to the discretion of the trial court, and we will not disturb the action of the trial court on appeal unless it acted unreasonably and in clear abuse of discretion." *TLC Development, Inc.* v. *Planning & Zoning Commission,* supra, 533–34. The burden of proving such an abuse of discretion rests on the appellant. *Cahn* v. *Cahn,* 225 Conn. 666, 678, 626 A.2d 296 (1993); *Curry* v. *Burns,* 33 Conn. App. 65, 74, 633 A.2d 315 (1993).

The plaintiff contends that it did not present to the trial court the factual evidence that it presented to the arbitrators because it did not think the trial court could make its own factual determination as to the amount of future workers' compensation benefits. In denying the plaintiff's motion to open, the trial court made clear that its denial was based on the plaintiff's failure to provide a record supporting the contention that the arbitrators had a sufficient factual basis to determine the amount of future benefits. The reasons set forth in the trial court's memorandum[6] are not unreasonable,

---

[6] In its memorandum of decision, the trial court stated: "At the time the court heard the plaintiff's motion to vacate, correct, or modify award, the plaintiff failed to introduce a record of the arbitration proceedings. Contrary to the plaintiff's assertion in its brief in support of its motion to open the judgment, the court never concluded that the court, rather than the arbitrators, should determine the amount of future compensation benefits. It was incumbent on the plaintiff to produce a record to support its contention that the arbitrators had a sufficient factual basis to determine that amount of workers' compensation benefits which might be awarded in the

nor do they constitute an abuse of discretion. We can see no compelling reason why the trial court should have opened and reconsidered its decision or allowed the plaintiff to file supplemental evidence that it had available at the time of trial. We conclude that the trial court did not abuse its discretion. *TLC Development, Inc.* v. *Planning & Zoning Commission,* supra, 215 Conn. 533–34.

## III

The defendant cross appeals claiming that the trial court improperly reduced the amount of underinsured motorist benefits awarded to her by crediting Allstate with twice the amount actually paid out by the tortfeasor, thus creating a windfall to the plaintiff and depriving Link of a payment of $100,000 due her that she did not receive. We agree.

The issue of the calculation of underinsured motorist benefits due an insured party is entirely separate from the initial determination of whether in fact a tortfeasor is underinsured. *Covenant Ins. Co.* v. *Coon,* supra, 220 Conn. 33. Although interpolicy stacking is prohibited in the initial determination of whether underinsured motorist coverage is applicable, it is proper to aggregate the amounts available under the applicable policies in calculating the total amount of underinsured motorist coverage available to the insured. Id., 36.

Once the total amount of underinsured motorist coverage is calculated, § 38a-334-6 (d) (1) of the Regulations of Connecticut State Agencies provides that an insurance policy "may provide for the reduction of limits [of underinsured motorist liability] to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury."

future. In the absence of a factual basis for making such a determination, the arbitrators could not err by failing to make such a determination."

The proper distribution of a tortfeasor's credit between more than one insurance policy covering a single claimant is one of first impression. Most cases addressing the subject of reduction of underinsured motorist benefits for payments made by the tortfeasor have addressed the issue as it involves payments to multiple claimants in the same accident. In those cases, the decisions have focused on the precise language of the applicable insurance contract. For example, in *Stephan* v. *Pennsylvania General Ins. Co.*, 224 Conn. 758, 621 A.2d 258 (1993), and its companion case, *Buell* v. *American Universal Ins. Co.*, supra, 224 Conn. 766, the insurance policies at issue contained similar clauses allowing the insurer to reduce the damages owed to the claimant by the amount paid by the tortfeasor for "*the* bodily injury." (Emphasis added.) Interpreting this language, the court determined that reductions were allowed only for payments made by the tortfeasor for the bodily injury sustained by the claimant, and not for any payments for the bodily injuries of others. By comparison, in *Allstate Ins. Co.* v. *Lenda,* supra, 34 Conn. App. 452, the applicable insurance policy provided that "[t]he limits of this coverage will be reduced by: (1) all amounts paid by the owner or operator of the uninsured auto . . . ." There, the court held that the language provided for reductions by all amounts paid by the tortfeasor, including amounts paid to other claimants as well as for payments made for damages other than bodily injury. *Lenda* further held that this policy language did not violate § 38a-334-6 of the Regulations of Connecticut State Agencies. Although these cases may stand for the proposition that a single claimant's award may be reduced by more than that claimant actually received, in no case has a claimant received a reduction of more than the total amount paid out by or on behalf of a tortfeasor.

Some related cases that have not specifically addressed this issue, have implied that a tortfeasor's contribution should be shared among the policies covering the insured. In *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 591 A.2d 101 (1991), the insured filed claims for underinsured motorist benefits under two insurance policies issued by separate insurance carriers. The arbitrators decided that the two insurance companies would share the tortfeasor's credit proportionately to their coverage. Id., 651. This decision was upheld by the trial court, and was not disputed on appeal. Id., 653. Similarly, in *Stephan* v. *Pennsylvania General Ins. Co.*, supra, 224 Conn. 761, the parties agreed at arbitration that the award would be prorated between the two insurance companies. This again was not disputed on appeal. Alternately, *Aetna Casualty & Surety Co.* v. *CNA Ins. Co.*, 221 Conn. 779, 606 A.2d 990 (1992), upheld an arbitration award in which the entire amount of tortfeasor credit was subtracted from the liability of the primary insurance company, with the remainder of the award to be paid by the secondary insurer. In no case was each insurance company entitled to be credited with the entire sum paid by the tortfeasor.

The fact that the policies held by Link were issued by the same insurance company should not dictate a different result. The amount of damages paid by the tortfeasor may reduce the total amount of underinsured motorist benefits available to a claimant. It may not reduce the amounts paid out by each policy. To hold otherwise would mean that an award due an insured is reduced unfairly by twice the amount actually paid out by or on behalf of the tortfeasor and that an insurer is entitled to double the tortfeasor's credit merely by issuing separate policies. Such a result would be unfairly detrimental to the insured.

The trial court improperly determined that only $400,000 of underinsured motorist coverage was available to Link after the insurance company was credited with the amount paid to Link by the tortfeasor. Rather, Link was entitled to have available·a total of $600,000 in underinsured motorist benefits under the two Allstate policies. From this total, Allstate should have been credited with only the $100,000 actually paid by the tortfeasor, as well as with the $281,244 contribution of workers' compensation benefits actually paid.

The judgment is reversed in part as to the issues raised on the cross appeal and the case is remanded with direction to render judgment as on file except as modified to reduce the offset to a cumulative total of $100,000 in tortfeasor credit. As to the issues raised on the appeal, the judgment is affirmed.

In this opinion the other judges concurred.