[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issue in this proceeding to vacate, modify, correct or confirm an award of underinsured motorist benefits is whether the plaintiff insurer may reduce the amount of benefits it would otherwise owe its insured by the amount of workers compensation benefits the insured received but was required by law to repay. This court holds that the amount of underinsured motorist benefits may not be reduced.
The plaintiff, the New Hampshire Insurance Company ("New Hampshire"), has filed an application to vacate, correct or modify an arbitration award of underinsured motorist benefits in favor of the defendant, John Masterson, in the amount of $114,682.12. Masterson has filed a motion to confirm the award. The arbitration proceeding concerned injuries sustained by Masterson in an automobile accident on April 24, 1989. The accident was caused by the negligence of a third party, Stephen Robbins, who was insured under a liability policy with Aetna Property Casualty Company having limits of $300,000. After settling his claim against Robbins, Masterson made a claim for underinsured motorist benefits against his policy with New Hampshire. The parties submitted to arbitration pursuant to the terms of the New Hampshire policy.
According to the arbitrators' award, the parties stipulated to the following facts at the arbitration hearing:
"1. There was liability on the part of Aetna Property Casualty Company's insureds for the underlying accident.
2. There is available to the claimant, John Masterson[,] $600,000 in uninsured motorist benefits as a result of his coverage with . . . New Hampshire Insurance Company.
3. Aetna Property and Casualty Company paid $300,000 on behalf of the tortfeasors — their insureds, and the . . . New Hampshire Insurance Company is entitled to an offset in that amount.
4. The claimant received the sum of $120,617.91 in workers compensation benefits. Those sums were repaid by the claimant to the workers compensation carrier at the time of the settlement of his case against the tortfeasors.
5. The claimant sustained, for workers compensation purposes, a 15% permanent disability of the lumbosacral spine and would be CT Page 13978 entitled to a future specific award of $33,800. Using the tables supplied by the Workers Compensation Commission, the present discounted value is $31,367.13 and . . . New Hampshire Insurance Company is entitled to an offset of said amount.
6. The claimant was awarded Social Security benefits and said benefits will continue until at least December 31, 1996. Benefits through that date are $58,950.75. The . . . New Hampshire Insurance Company is entitled to an offset of said amount."
In addition, the arbitrators found, and the parties do not dispute, that the claimant's medical expenses, lost earnings, and damages for pain and suffering entitle the claimant to a gross award of $505,000. The arbitrators further found that New Hampshire is entitled to combined offsets totaling $390,317.88. According to the arbitrators, the offsets include a payment by the tortfeasor's insurance carrier of $300,000, social security disability payments of $58,950.75, and an additional $31,367.13 which represents the discounted value of the workers compensation future specific award. The offset amount determined by the arbitrators excludes $120,617.91 in workers compensation payments to Masterson which he was required to repay to the worker's compensation carrier upon settlement of his claim against Robbins. Therefore, arbitrators awarded Masterson $114,682.12.
Pursuant to General Statutes §§ 52-418, 52-419[1] New Hampshire has moved to vacate, correct or modify the arbitration award on the ground that the insurance policy issued by New Hampshire, as authorized by of the Regulations of Connecticut State Agencies, required the arbitrators to offset any amount recoverable under the policy by an additional $120,617.91 — the amount of workers compensation benefits paid to Masterson but later repaid by him. Masterson has moved to confirm the arbitration award, arguing that because he was required to repay the $120,617.91 to the workers' compensation carrier, the arbitrators were correct in excluding that amount from the total offset amount.[2]
 I
New Hampshire's policy of insurance provides for binding arbitration as to whether an insured is legally entitled to recover damages and as to the amount of damages. General Statutes § 38a-336(c) provides in relevant part: "Each automobile liability insurance policy . . . which contains a provision for CT Page 13979 binding arbitration shall include a provision for final determination on insurance coverage in such arbitration proceeding." In American Universal Ins. Co. v. DelGreco,205 Conn. 178, 191, 621 A.2d 262 (1987), the court held that "where judicial review of compulsory arbitration proceedings required by § 38-175c(a)(1) [now § 38a-336(c)] is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." "This provision . . . makes arbitration of insurance coverage issues compulsory." (Emphasis in original.)Bodner v. United Services Automobile Assn., 222 Conn. 480, 488,610 A.2d 1212 (1992). "[A] coverage issue is one that . . . involves the interpretation of both statutory and policy language . . . or otherwise implicates the scope of coverage afforded by the terms of the policy." (Citations omitted.) Wynnv. Metropolitan Property Casualty Ins. Co., 30 Conn. App. 803,806, 635 A.2d 814 (1993), affirmed, 228 Conn. 436, 635 A.2d 814
(1993). Whether an uninsured or underinsured motorist carrier is entitled to a credit as to benefits owed or a deduction from its limits of liability on account of monies paid by another is a question of coverage requiring a de novo review as to the arbitrators' conclusions of law. Buell v. American Universal Ins.Co., supra, 224 Conn. 770-71; Stephan v. American Universal Ins.Co., 224 Conn. 758, 763-65, 621 A.2d 258 (1993); Ohmes v. Government Employees Ins. Co., Superior Court, Judicial District of Fairfield, No. 316002 (1995). Here, the issue which was before the arbitrators and is now before the court involves the interpretation of a policy provision and a regulation promulgated by the insurance commissioner. Accordingly, the court is duty-bound to review de novo the arbitrators' conclusion of law as to whether New Hampshire was entitled to reduce underinsured motorist benefits payable by the amount of workers compensation benefits which Masterson had reimbursed his employer's workers compensation insurer. Whether workers compensation benefits should be deducted from the amount of coverage or the amount of an award of underinsured motorist benefits is an issue of coverage requiring de novo review. Cf. Rydingsword v. LibertyMutual Ins. Co., 224 Conn. 8, 13n. 9, 21, 615 A.2d 1032 (1992);Wilson v. Security Ins. Co., 213 Conn. 532, 569 A.2d 40 (1990), cert. denied, 498 U.S. 814, 111 S.Ct. 52, 112 L.Ed.2d 28 (1990).
 II
New Hampshire's insurance policy provides, with respect to uninsured motorist coverage: "The limit of liability shall be CT Page 13980 reduced by all sums . . . Paid or payable because of the bodily injury under . . . workers' compensation law . . . ." "The language of § 38a-334-6 of the Regulations of Connecticut State Agencies authorizes this type of policy provision."Allstate Ins. Co. v. Lenda, 34 Conn. App. 444, 456, 642 A.2d 22
(1994).[3]
Both parties advance cogent arguments in support of their respective positions and cite case law which they claim bolster those views.[4] At the outset, two realities must be recognized. First, to allow New Hampshire to deduct the workers compensation benefits repaid by the defendant would be inequitable, as has repeatedly been observed in the cases cited by the defendant. See Aetna Life Casualty v. Pederson, Superior Court, Judicial District of Stamford-Norwalk at Stamford, No. 143910 (1995); Aviles v. Nationwide Mutual Ins. Co., Superior Court, Judicial District of Waterbury, No. 122241 (1995); Monseesv. Cigna Property Casualty Ins. Co., Superior Court, Judicial District of Hartford-New Britain at New Britain, No. 452744 (1993), andLoika v. Allstate Ins. Co., Superior Court, Judicial District of Middlesex, No. 65058 (1993), later, 44 Conn. Sup. 59, ___ A.2d ___ (1995), affirmed per curiam, 39 Conn. App. 717, ___ A.2d ___ (1995). The defendant has not received the benefit of those payments. Second, under the literal wording of the policy, and the insurance regulation, the defendant in fact was "paid" sums because of bodily injury under a workers compensation law. "In addressing this question," however, "we do not write on a clean slate." Luf v. Southbury, 188 Conn. 336, 349, 449 A.2d 1001
(1982).
In Rydingsword v. Liberty Mutual Ins. Co., 224 Conn. 8,615 A.2d 1032 (1992), the Supreme Court was called upon to interpret the same policy provision in light of the same insurance regulation as is in issue here. "The principal issue in th[at] appeal [was] whether an insurer is entitled to set off against its liability for underinsured motorist coverage an amount equal to the value of an unrealized workers' compensation award for which the claimant has not yet chosen to apply." Id., 9. This required the court to interpret the phrase "sums . . . payable" in the policy provision and in the insurance regulation. Id.,14-17. While the court held that the phrase was not ambiguous, in this case this court's determination is informed by the following language from the Rydingsword court's discussion of the term "payable". Said the court: "`The word "payable" clearly connotes that something need only be capable of being paid.' Griswold v.CT Page 13981Union Labor Life Ins. Co., [186 Conn. 507, 517 442 A.2d 920
(1982)]. The trial court construed the word "payable" to connote only an amount of money previously awarded by the commissioner but not yet collected by the claimant. We reject as undulyrestrictive a construction that would allow the exclusion only if the claimant has already secured an award from the workers' compensation commissioner but has not yet received actual payment in a fixed and determined amount at the time of the underinsured motorist arbitration hearing." (Footnote omitted; emphasis added.) Id., 16-17. In response to the plaintiff's claim inRydingsword "that he has the right to a final determination of an award by the workers' compensation commissioner before his underinsured motorist coverage carrier can receive a credit for such award even though he chooses not to submit his claim to the commissioner"; id., 17; the court answered that "[t]he defendant's construction of the phrase `sums . . . payable' is . . . congruent with the underlying intent of General Statutes § 38a-334 and the implementing regulations promulgated by the insurance commissioner. `The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance.'" Id., 17-18.
In Allstate Ins. Co. v. Link, 35 Conn. App. 338,645 A.2d 1052 (1994), the defendant was injured in a two-car accident. The tortfeasor's insurance company paid the defendant $100,000, exhausting that coverage. She then made a claim for underinsured motorist benefits under her own two policies with Allstate. "One policy covered two vehicles, and the other policy covered four vehicles. Each policy carried a separate policy number and provided for uninsured-underinsured motorist coverage limits of $100,000 . . . ." Id., 339-340. Section 38a-334-6
(d)(1) of the Regulations of Connecticut State Agencies provided that an insurance policy "may provide for the reduction of limits [of underinsured motorist liability] to the extent that damages have been . . . paid by or on behalf of any person responsible for the injury." Id., 346. The defendant cross appealed "claiming that the trial court improperly reduced the amount of underinsured motorist benefits awarded to her by crediting Allstate with twice the amount actually paid out by the tortfeasor, thus creating a windfall to the plaintiff [Allstate] and depriving [her] of $100,000 due her that she did not receive." Ibid. CT Page 13982
The appellate court, while recognizing that the issue was one of first impression; id., 347; observed that prior cases recently decided by the supreme court had assumed, albeit without expressly deciding, that the damages paid by or on behalf of a tortfeasor should be shared or apportioned between carriers providing underinsured motorist coverage. "In no case was each insurance company entitled to be credited with the entire sum paid by the tortfeasor." Id., 348. "[T]hat the policies held by Link were issued by the same insurance company," concluded the court, "should not dictate a different result. The amount of damages paid by the tortfeasor may reduce the total amount of underinsured motorist benefits available to a claimant. It may not reduce the amounts paid out by each policy. To hold otherwisewould mean that an award due an insured is reduced unfairly bytwice the amount actually paid out by or on behalf of thetortfeasor and that an insured [sic] is entitled to double thetortfeasor's credit merely by issuing separate policies. Such aresult would be unfairly detrimental to the insured." (Emphasis added.) Ibid.
"`A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time which it is used.' Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158,62 L.Ed. 372 (1918)." Struckman v. Burns, 205 Conn. 542, 555,534 A.2d 888 (1987); see Giammattei v. Egan, 135 Conn. 666, 668,68 A.2d 129 (1949). The "circumstances" in which the word "paid" is here used is in the context of providing underinsured motorist benefits. In accordance with Rydingsword the court rejects as "unduly restrictive" New Hampshire's interpretation of the term "paid" and, consonant with both Rydingsword and Link will interpret that word in accordance with the purpose for which underinsured motorist benefits exist. "The purpose of [uninsured and underinsured motorist benefits] . . . is to compensate an insured to the same extent as he would have been if he had been injured by a motorist carrying liability insurance equal to the coverage carried by the insured, unless the insured has elected in writing uninsured motorist coverage in an amount less than his liability coverage." Mass. v. United States Fidelity GuarantyCo., 222 Conn. 631, 647, 610 A.2d 1185 (1992); see Bennett v.Automobile Ins. Co. of Hartford, 230 Conn. 795, 800-01,646 A.2d 806 (1994); Smith v. Safeco Ins. Co. of America, 225 Conn. 566,573, 624 A.2d 892 (1993); Harvey v. Travelers Indemnity Co.,188 Conn. 245, 249, 449 A.2d 245 (1982); Ohmes v. GovernmentEmployees Insurance Co., Superior Court, Judicial District of CT Page 13983 Fairfield, No. 316002 (1995). "Quite clearly, any reduction [in underinsured motorist benefits] must be for an amount actually received by the claimant." Loika v. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 70. But to contend that an amount received but reimbursed by a claimant has been paid to him, for purposes of reducing his underinsured motorist benefits, simply is exalting form over substance. "We do not exalt form over substance." National Elevator Industry v Scrivani, 31 Conn. App. 728,732, 626 A.2d 1332 (1993). Based on the teachings ofRydingsword and Link, this court holds that the word "paid", within the ambit of the policy provision and insurance regulation providing for the reduction of liability limits by the sum of workers compensation benefits paid to the insured, means benefits which have not been repaid as mandated by law. Cf. Sibley v.Detroit Automobile Inter-Insurance Exchange, 431 Mich. 164,427 N.W.2d 528, 531 (1988).
The application to vacate, modify or correct the arbitration award is denied. The application to confirm the award is granted.